| | |
|---|---|
| PELICAN ICE & COLD STORAGE, LLC | CIVIL ACTION |
| VERSUS | NO. 17-7323 |
| ROSS METAL PRODUCTS, INC., ET AL. | SECTION: "G"(4) |

# ORDER AND REASONS

Pending before this Court is Defendant Brian Tracey's ("Tracey") "Rule 56 Motion for Partial Summary Judgment Regarding Dismissal of All Claims Against Defendant, Brian Tracey."[1] In the motion, Tracey argues that he is entitled to summary judgment because under New York law, an individual corporate officer has no personal liability for the acts of a corporation.[2] In opposition, Plaintiff Pelican Ice & Cold Storage, LLC ("Plaintiff") argues that Tracey should be held personally liable because Tracey acted in bad faith, and the Court should pierce the corporate veil to hold Tracey personally liable for the actions of the corporation.[3] Having considered the motion for partial summary judgment, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 64.

[2] Id.

[3] Rec. Doc. 68.

1

## I. Background

### A. *Factual Background*

In the summer of 2015, Plaintiff Pelican Ice & Cold Storage, LLC began negotiating with Ross Metal Products, Inc. ("RMP") for RMP to manufacture an ice palletizer for Plaintiff's ice plant in Kenner, Louisiana.[4] On October 24, 2015, Tracey, the owner and president of RMP, visited Plaintiff's ice plant to inspect the plant and take measurements.[5] That same day, the parties executed a contract, titled Quote 15-1622-PI-4, where RMP would build an ice palletizer to be delivered to Plaintiff's facility.[6] In exchange, Plaintiff agreed to pay RMP in excess of $185,600.00.[7] Plaintiff alleges that the ice palletizer was installed on October 25, 2016, but that it did not perform its intended functions.[8] Plaintiff further alleges that Defendants RMP and Tracey (collectively, "Defendants") made representations that were never met regarding the way the ice palletizer would function, and represented that the ice palletizer would be tested and operational before delivery.[9] Finally, Plaintiff alleges that Tracey acknowledged that the ice palletizer was not working, but he shipped the ice palletizer to Plaintiff anyway because he needed the money.[10]

### B. *Procedural Background*

On March 20, 2017, Plaintiff filed suit against Tracey and RMP in the 24th Judicial District

---

[4] Rec. Doc. 1-1 at 3.

[5] Id.

[6] Rec. Doc. 19-1 at ¶ 7; Rec. Doc. 24-1 at ¶ 7.

[7] Rec. Doc. 1-3 at 4.

[8] Id.

[9] *Id.* at 4–6.

[10] *Id.* at 9–10.

Court for the Parish of Jefferson.[11] On July 31, 2017, Defendants removed the matter to this Court.[12] On September 26, 2017, Defendants filed a "Rule 56 Motion for Partial Summary Judgment Regarding Choice of Law."[13] On April 4, 2018, this Court ruled that New York law will govern the case.[14]

On August 28, 2018, Tracey filed the instant "Rule 56 Motion for Partial Summary Judgment Regarding Dismissal of All Claims Against Defendant, Brian Tracey."[15] On September 12, 2018, Plaintiff filed an opposition to the motion.[16] On October 1, 2018, with leave of Court, Tracey filed a reply in further support of the motion.[17]

On October 12, 2018, with leave of Court, Plaintiff filed an Amended and Supplemental Complaint.[18] In the amended complaint, Plaintiff alleges that Tracey fraudulently represented that the ice palletizer could stack 35 to 40 bags of ice per minute, that the palletizer had been thoroughly tested, and that the palletizer performed all of its intended functions.[19] Plaintiff asserts that any acceptance of delivery of the ice palletizer was based on Plaintiff's reasonable reliance on these allegedly false representations.[20]

---

[11] *Id.* at 2.

[12] Rec. Doc. 1.

[13] Rec. Doc. 19.

[14] Rec. Doc. 54.

[15] Rec. Doc. 64.

[16] Rec. Doc. 68.

[17] Rec. Doc. 94.

[18] Rec. Doc. 111.

[19] *Id.* at 3.

[20] *Id.* at 4.

## II. Parties' Arguments

### A.   *Tracey's Arguments in Support of the Motion for Summary Judgment*

In the motion, Tracey argues that he is entitled to summary judgment because he cannot be held personally liable for the acts of RMP.[21] First, Tracey asserts that all of the actions he took in performance of the contract were taken on behalf of RMP and he assumed no personal liability.[22] Next, Tracey asserts that Plaintiff is unable to pierce the corporate veil to hold him personally liable for the acts of RMP because Tracey did not act in a manner that would abuse the corporate form.[23]

#### 1.   **Personal Liability for Corporate Officers**

Tracey argues that under New York law, "an individual corporate officer has no personal liability for the acts of a corporation."[24] Tracey asserts that a corporate officer is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith, or committed a tort in connection with the performance of the contract."[25] Tracey further asserts that the Petition does not allege that Tracey assumed personal liability, acted in bad faith, or committed a separate tort in connection with the contract.[26] Tracey contends that the contract evidences that Tracey acted solely as a representative of RMP.[27] Tracey asserts that the contract

---

[21] Rec. Doc. 64-2 at 6.

[22] Id.

[23] *Id.* at 7–8.

[24] Rec. Doc. 64-2 at 3–4.

[25] *Id.* at 4.

[26] *Id.* at 6.

[27] Id.

only represents terms proposed by RMP, was sent on RMP letterhead, solely identifies RMP as the seller, and states that it was submitted by the president of RMP.[28] Finally, Tracey asserts that "at no time did Mr. Tracey act independently, do anything outside or in contradiction of his official capacity with the corporation, or assume any personal liability."[29]

### 2. Piercing of the Corporate Veil

Tracey also argues that "[u]nder New York law, a plaintiff may only seek a judgment against an individual acting in his or her corporate capacity if the plaintiff seeks to pierce the corporate veil."[30] Tracey asserts that Plaintiff's petition "failed to include any cause of action to pierce the corporate veil, as any such cause of action would be baseless given that Mr. Tracey acted solely as a corporate representative of RMP."[31] Tracey relies on his answers to Plaintiff's First Set of Interrogatories[32] as evidence that he "did not abuse the corporate form by failing to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use."[33] Tracey points out that in the answers, he attests to the fact that he received no dividends, bonuses, loans or guaranty from RMP and RMP never paid any of his personal debts.[34] Accordingly, Tracey argues that he cannot be held individually liable under New

---

[28] Id.

[29] Id.

[30] *Id.* at 5.

[31] Id.

[32] Rec. Doc. 64-4.

[33] Rec. Doc. 64-2 at 7–8.

[34] *Id.* at 6–7.

5

York law and all claims against him should be dismissed with prejudice.[35]

B.  *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Plaintiff argues that Tracey is personally liable under two different theories.[36] First, Plaintiff asserts that Tracey is personally liable because he acted in bad faith.[37] Next, Plaintiff argues that Tracey acted in a manner that warrants piercing the corporate veil and holding him personally liable.[38]

### 1. Personal Liability for Corporate Officers

Plaintiff argues that "a director may be personally liable for his corporation's contractual breaches if he acted in bad faith or committed a tort in connection with the performance of the contract."[39] Plaintiff asserts that "Tracey acted in bad faith when he shipped the ice palletizer to Pelican Ice in Kenner, Louisiana knowing that the ice palletizer did not actually palletize ice or perform any of its intended functions."[40] Plaintiff contends that Tracey made fraudulent representations about testing the palletizer with bags of ice and finding that it functioned properly before shipping it.[41] Plaintiff alleges that Tracey "admitted to both Pelican Ice President Arthur Renaudin and a Pelican Ice manager that he knew the machine did not function properly, but he had too much money invested in it and he had to get it out of his shop, so he shipped the machine

---

[35] *Id.* at 8.

[36] Rec. Doc. 68-1 at 5.

[37] Id.

[38] Id.

[39] *Id.* at 11.

[40] Id.

[41] *Id.* at 12–13.

anyway."[42] Plaintiff contends that these actions constitute bad faith and were decisions that Tracey "made on his own, and which [were] outside of his corporate duties."[43]

### 2. Piercing the Corporate Veil

Plaintiff also argues that courts will disregard the corporate form and pierce the corporate veil where necessary to prevent fraud or achieve equity.[44] Plaintiff asserts that this Court should pierce the corporate veil and hold Tracey personally liable for the actions of RMP because "RMP lacks the requisite formalities of a true functioning corporation."[45] Plaintiff supports this argument by proffering that Tracey is the sole owner of RMP stock, but notes that no information is available on the value Tracey paid for the stock or any dividends he receives.[46] Plaintiff further asserts that minutes of RMP's board meetings reflect that no business is conducted by the board.[47] Plaintiff also contends that the corporate veil should be pierced because RMP is "on the verge of bankruptcy" and lacks insurance, which Plaintiff asserts are indicators that RMP was inadequately capitalized.[48]

Additionally, Plaintiff contends that Tracey made 22 loans to RMP but there are "no loan agreements, promissory notes, or interest charged/paid that weigh in favor of considering these

---

[42] *Id.* at 15.

[43] Id.

[44] Id. at 5 (citing Matter of Morris v. N.Y. State Dep't. of Taxation & Fin., 82 N.Y.2d 135, 140 (1993)).

[45] *Id.* at 7.

[46] *Id.* at 6–7.

[47] *Id.* at 7–8.

[48] *Id.* at 8.

transfers as any arms-length loans."[49] Further, Plaintiff argues that 50 weekly payments made to Tracey by RPM, which have been classified as "loan repayments," may actually be funds given to Tracey for personal use.[50] Finally, Plaintiff contends that "there is significant overlap in the corporate structure of RMP, Inc. as Defendant, Brian Tracey is the president, chief executive officer, and only employee of the company.[51] Plaintiff asserts that this further supports an argument for piercing the corporate veil.[52] For these reasons, Plaintiff argues that genuine issues of material fact exist regarding Tracey's personal liability and summary judgment is inappropriate.[53]

### C. *Tracey's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Tracey argues that Tracey "acted within his scope of authority and duties from RMP at all times during the subject business transaction [and] Plaintiff fail[ed] to reject, refute, or present evidence to the contrary."[54] Tracey further argues that Plaintiff failed to show that it contracted with Tracey directly.[55] Tracey asserts that both RMP and Plaintiff understood that Plaintiff contracted with RMP and not Tracey.[56] Tracey denies Plaintiff's assertion that Tracey made false representations, and Tracey asserts that Plaintiff did not present evidence to support

---

[49] *Id.* at 9.

[50] *Id.* at 9–10.

[51] *Id.* at 10.

[52] Id.

[53] *Id.* at 16.

[54] Rec. Doc. 94 at 1.

[55] *Id.* at 2.

[56] Id.

8

these accusations.[57] Additionally, Tracey asserts that the types of representations that Plaintiff alleges Tracey made are covered by the business judgment rule and do not qualify as independent torts under New York's law on bad faith.[58]

Tracey also argues that Plaintiff did not present evidence to show that this Court should pierce the corporate veil.[59] Tracey asserts that "RMP was properly filed with the New York Secretary of State, maintains separate bank accounts, conducts business in its own name, and holds annual meetings."[60] Tracey further argues that Plaintiff failed to show that RMP is undercapitalized or that Tracey "took steps to render the corporate defendant insolvent."[61] Tracey contends that Plaintiff did not provide evidence that the payments to Tracey from RMP were monies for personal use, and it is "certainly legitimate" that the funds were part of RMP paying off its loan from Tracey.[62] Finally, Tracey asserts that it is common in New York for one person to solely own and operate a company, and this does not automatically provide a basis to pierce the corporate veil.[63] Accordingly, Tracey argues that the motion for partial summary judgment should be granted.[64]

---

[57] *Id.* at 9–10.

[58] Id.

[59] *Id.* at 2–4.

[60] *Id.* at 4.

[61] *Id.* at 7 (quoting *James v. Loran Realty V Corp.*, 20 N.Y.3d 918 (2012)).

[62] *Id.* at 8.

[63] Id.

[64] *Id.* at 10.

9

## III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[65] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[66] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[67] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[68] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[69]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[70] "To satisfy this burden, the movant

---

[65] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[66] Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398–99 (5th Cir. 2008).

[67] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[68] Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

[69] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[70] *Celotex*, 477 U.S. at 323.

may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[71] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[72] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[73] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[74] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[75]

---

[71] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[72] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[73] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[74] *Little*, 37 F.3d at 1075.

[75] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

## IV. Analysis

As stated more fully above, Tracey argues that under New York law, he is not subject to personal liability because Tracey did not act in bad faith and all of Tracey's actions were taken on behalf of RMP.[76] In opposition, Plaintiff argues that Tracey should be personally liable because Tracey acted in bad faith when he fraudulently misrepresented to Plaintiff that the palletizer functioned properly.[77]

New York precedent has established that "[t]he law permits the incorporation of a business for the very purpose of escaping personal liability."[78] Under New York law, "[a] director is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract."[79] Moreover, even where a director takes action in his official capacity that results in a breach of a contract, the action does not render him personally liable.[80] Personal liability arises when the corporate officer failed to act in good faith or commits independent torts directed at another.[81] A corporate officer who participates in the commission of a tort may be held personally liable under New York law regardless of whether the corporate veil is pierced.[82]

---

[76] Rec. Doc. 64-2.

[77] Rec. Doc. 68-1 at 11.

[78] *Bartle v. Home Owners Coop.*, 309 N.Y. 103, 106 (1955).

[79] *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993) (citing *Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915 (1978)).

[80] *Mills*, 12 F.3d at 1177 (citing *Murtha*, 45 N.Y.2d at 915).

[81] *Murtha*, 45 N.Y.2d at 915 (citing *Buckley v. 112 Cent. Park South*, 285 A.D. 331, 334 (N.Y. App. Div. 1954)).

[82] *L.I. City Ventures LLC v. Sismanoglou*, 158 A.D.3d 567, 568 (N.Y. App. Div. 2018) (internal citations omitted); *N. Shore Architectural Stone, Inc. v. Am. Artisan Const., Inc.*, 153 A.D.3d 1420 (N.Y. App. Div. 2017).

New York law recognizes the tort of fraudulent misrepresentation.[83] To recover damages for fraudulent misrepresentation, a plaintiff must prove: "(1) a misrepresentation or an omission of material fact which was false and known to be false by defendant; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) justifiable reliance by plaintiff on the misrepresentation or material omission; and (4) injury."[84]

Plaintiff asserts that Tracey acted in bad faith because he knew the ice palletizer did not function properly, and he fraudulently misrepresented to Plaintiff that the palletizer was working properly.[85] Plaintiff presents text messages exchanged between Tracey and Todd Roberts, Plaintiff's Plant Manager, in August 2017.[86] In a message dated August 4, 2016, Roberts asked Tracey if he had "run the machine with ice," and Tracey responded, "[u]gly ugly pallets. Too embarrassed to send pictures. Still tweaking, we'll get it."[87] On August 8, 2016, Tracey told Roberts via text message "[t]he machine is cycling fine. Doing what it needs to do."[88] On August 18, 2016, Tracey informed Roberts via text that he was "[n]ot happy with the way the stack looks," but the next day he stated that it "[l]ooks so much better."[89]

Plaintiff presents an affidavit of Roberts, wherein Roberts attests that he relied on Tracey's representations that Tracey had tested the ice palletizer with bags of ice and that it was functioning

---

[83] *Lewis v. Wells Fargo Bank, N.A.*, 134 A.D.3d 777, 778 (N.Y. App. Div. 2017).

[84] *Id.* (internal citations omitted).

[85] Rec. Doc. 111 at 3–4; Rec. Doc. 68-1 at 11–15.

[86] Rec. Doc. 68-1 at 12–14.

[87] Rec. Doc. 68-3 at 37.

[88] *Id.* at 38.

[89] *Id.* at 39.

properly before it was shipped to Plaintiff's facility in Kenner, Louisiana.[90] Furthermore, Plaintiff presents an affidavit of Arthur Renaudin, Plaintiff's President, who attests that after the ice palletizer was shipped to Plaintiff's facility, Tracey attempted to make repairs, modifications, and adjustments to the palletizer to no avail.[91] Renaudin also attests that he called Tracey into his office to discuss the situation, and when he asked Tracey why he would ship a machine that obviously did not work, Tracey responded that he "had too much money invested in the palletizer and [he] had to get it out of [his] shop."[92]

Plaintiff has presented evidence to support its contention that Tracey acted in bad faith or made fraudulent misrepresentations to Plaintiff, upon which Plaintiff relied. Therefore, because there remains a genuine question of material fact as to whether Tracey may be held personally liable because he either acted in bad faith or committed the tort of fraudulent misrepresentation, summary judgment is not appropriate. As the Court will deny summary judgment on these grounds, it does not need to address Plaintiff's alternative argument that the Court should pierce the corporate veil to hold Tracey personally liable for the actions of RMP because Tracey did not maintain the corporate form.

## V. Conclusion

As there remains a genuine question of material fact as to whether Tracey may be held personally liable because he either acted in bad faith or committed the tort of fraudulent misrepresentation, the Court denies Tracey's motion for summary judgment.

---

[90] *Id.* at 47.

[91] *Id.* at 43.

[92] *Id.* at 44.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Brian Tracey's Rule 56 Motion for Partial Summary Judgment Regarding Dismissal of All Claims Against Defendant, Brian Tracey[93] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 24th day of October, 2018.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[93] Rec. Doc. 64.